IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| POPLAR AVALON, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-2393-STA-dkv |
| | ) | |
| SPRINTCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**
_____

Before the Court is Plaintiff Poplar Avalon, LLC's Motion to Remand (ECF No. 8) filed on June 14, 2016. Defendant Sprintcom, Inc. has responded in opposition. For the reasons set forth below, the Motion to Remand is **DENIED**.

## BACKGROUND

On May 17, 2016, Plaintiff filed a detainer action against Defendant in the General Sessions Court of Shelby County, Tennessee. Defendant removed the case to this Court on June 6, 2016. According to the Notice of Removal, this Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. Defendant alleges in the Notice of Removal that Plaintiff's detainer warrant seeks possession of property without monetary relief. Defendant argues that the amount in controversy is determined by the fair market value of the property rights at issue. Defendant occupies retail pace owned by Plaintiff and subject to a lease agreement dated March 23, 2004. The "Commencement Date" of the lease was May 1, 2004. The lease is in its second of five renewal terms, the last of

1

which expires in April 2034. The total "Fixed Minimum Rent" for the leased property for the remaining lease terms is $876,377.14. Plaintiff's detainer warrant seeks to cut off Defendant's use of the property. The "Fixed Minimum Rent" due under the lease is therefore the amount in controversy.

In its Motion to Remand, Plaintiff argues that Defendant has not shown that the amount in controversy element of the Court's diversity jurisdiction is satisfied in this case. Plaintiff claims that Defendant failed to pay the full rent due for the month of March 2016 and failed to cure the default within 20 days thereafter. Plaintiff initiated the forcible entry and detainer action for the sole purpose of taking possession of the property. Plaintiff seeks no money damages against Defendant. Plaintiff also points out that it served Defendant's assistant store manager, and not Defendant's registered agent for service of process, so as to avoid incurring any monetary damages and to comply with the Tennessee statutory requirements for possession by detainer warrant. Under this process, Plaintiff cannot recover monetary damages. Therefore, Defendant cannot establish the requisite amount in controversy, and the Court should remand this matter to General Sessions. Plaintiff seeks an award of its costs and attorney's fees associated with the removal of the case.

Defendant has responded in opposition. Defendant argues that the removal statute itself allows a removing defendant to allege an amount in controversy when the initial pleading seeks nonmonetary relief. The determining factor is the value of the object of the litigation. Defendant acknowledges that there is no controlling Sixth Circuit authority on this question but argues that the amount in controversy in this case is met under a variety of tests used by other courts to assess the value of the object of similar litigation. The Court should focus on the value of Defendant's leasehold rights to possess the property, as measured by any

of the following: the rent due for the existing lease term, the rent for the remainder of the lease including any renewal terms, the cost of improvements made by Defendant, and costs that would result from dispossession. According to Defendant, the rent due under the existing lease term (May 2014 through April 2019) is $215,797.20, and the rent remaining under the current term is $133,074.94. The total rent due under the existing term and the remaining renewal terms is $876,377.14. Therefore, by any of these measures, the amount in controversy is satisfied.

Defendant cites other approaches which analyze the value of possession by considering both the consequences of the loss of possession to the defendant and what regaining possession would mean for the landlord. Defendant argues that if it is forced to vacate the premises, it would lose its right under the existing lease to occupy the property while paying substantially less than current market rent. According to Defendant, the current "Fixed Minimum Rent" of $3,596.62 per month ($43,159.44 annually, working out to $13.50 per square foot) provided in the lease represents current market rental. Defendant explains that earlier this year, it notified Plaintiff that it was exercising Article 39 of the lease, which provides that if the tenant's gross sales for any fiscal year are less than $700,000, then the tenant has the option to pay three percent (3%) of Gross Sales in lieu of the "Fixed Minimum Rent." Defendant's rent under Article 39 currently averages $1,425.86, a difference of $2,170.76 per month or $5.35 per square foot under the Fixed Minimum Rent. Over the 37 months remaining on the current lease term, Defendant's rent is $80,318.12 below current market rent. In other words, this figure represents the value of Defendant's possible loss of possession of its leasehold and before the Court accounts for improvements Defendant has recently made to the property and Defendant's loss of the unique right to occupy the property.

Similar calculations show that the value of repossession of the property from Plaintiff's perspective also satisfies the amount in controversy requirement. If Plaintiff could take possession of the property and rent it to another tenant at the full fair market value of $3,596.62 per month, Plaintiff would collect $2,170.76 more per month for the 37 months left on the current term of the lease. Plaintiff would realize $80,318.12 more in rents through April 2019 than it will at Defendant's current rent under Article 39. Under any of the applicable tests, Defendant argues that the value of the object of this case exceeds the $75,000 amount in controversy required to establish the Court's subject matter jurisdiction. Therefore, the Court should deny Plaintiff's Motion to Remand.

## **STANDARD OF REVIEW**

"When a plaintiff files a case in state court that could have been brought in a federal district court, a defendant may invoke the removal statute, 28 U.S.C. § 1441, to secure a federal forum."[1] "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."[2] Pursuant to 28 U.S.C. § 1332(a), federal diversity jurisdiction exists over "civil actions where the matter in controversy exceeds the sum or value of $75,000" and the parties are citizens of different states.[3] Diversity of citizenship must be complete, meaning "no plaintiff can be the citizen of the same State as any defendant."[4] "In actions seeking declaratory or injunctive relief, it is well established that the amount in

---

[1] *Jarrett-Cooper v. United Airlines, Inc.*, 586 F. App'x 214, 215 (6th Cir. 2014) (quoting *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 83 (2005)).

[2] *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 518 (6th Cir. 2012) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

[3] 28 U.S.C. § 1332(a); *Fritz Dairy Farm, LLC v. Chesapeake Exploration, LLC*, 567 F. App'x 396, 398 (6th Cir. 2014).

[4] *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 541 (6th Cir. 2013).

controversy is measured by the value of the object of the litigation."[5] The burden to establish the existence of federal jurisdiction by a preponderance of the evidence rests with the removing party.[6]

## ANALYSIS

The issue presented is whether Defendant has discharged its burden to show that the amount in controversy in this case exceeds $75,000.00. The Court holds that it has. The Sixth Circuit has not specifically addressed the precise scenario presented, which is how to determine the value of an action for forcible entry and detainer. The Court of Appeals has adopted a number of rules in removal cases involving nonmonetary relief, which the Court finds instructive. In cases involving a prayer for declaratory relief, "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation."[7] In cases involving a prayer for injunctive relief, the "costs of complying with an injunction . . . may establish the amount-in-controversy."[8] A circuit split exists on the question of whether the value of the litigation should be assessed from the perspective of the plaintiff only or from the perspective of either the plaintiff or the

---

[5] *Hunt v. Wash. State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977); see also *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011).

[6] *Nowicki-Hockey v. Bank of Am., N.A.*, 593 F. App'x 420, 421 (6th Cir. 2014); *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) ("[The removing party] has the burden of showing that the requirement 'more likely than not' is satisfied.").

[7] *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (quoting *Lodal, Inc. v. Home Ins. Co. of Ill.,* No. 95–2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998) & *Beacon Constr. Co. v. Matco Elec. Co.,* 521 F.2d 392, 399 (2d Cir. 1975)).

[8] *Cleveland Housing Renewal Project*, 621 F.3d at 560 (quoting *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006)).

defendant.[9] The Sixth Circuit has never reached the question, describing the issue as a "jurisdictional morass."[10]

Based on these general principles, Defendant has shown by a preponderance of the evidence that the value of the object of Plaintiff's detainer warrant exceeds $75,000.00. From Plaintiff's perspective, the economic value of the rights Plaintiff seeks to protect in this case is at the very least the difference in the Fixed Minimum Rent owed under the lease agreement between the parties and the lower rent under Article 39, representing 3% of Defendant's gross sales. The Fixed Rent Payment due under the lease is currently $3,596.62 per month. Defendant has adduced evidence that this is the current market rental for similar property in the same area of Memphis, Tennessee.[11] The current term of the lease expires in April 2019, a matter of 37 months from the time Defendant invoked its option to reduce its rent. If Plaintiff prevails on its detainer warrant, Plaintiff will receive the right to repossess its property and the opportunity to lease it to another tenant at the current market rental. Defendant has shown then

---

[9] *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (citing *Olden v. Lafarge Corp.*, 383 F.3d 495, 503 n. 1 (6th Cir.2004) ("[T]here is a circuit split as to whether a court may determine the amount in controversy from the perspective of either party (the 'either viewpoint rule') or whether a court may only consider the plaintiff's viewpoint.").

[10] *Id.*; *see also Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro*, 129 F. App'x 194, 195-96 (6th Cir. 2005) ("[T]he amount in controversy should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.") (collecting cases and citing Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3708 (3d ed. 1998)); *but cf. Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770 (6th Cir. 2009) (considering the value of a possessory interest in the property as well as the underlying mineral interest to the lessee).

[11] Steffner Aff. ¶ 5 (ECF No. 14-2). Defendant cites for support the affidavit of Joseph L. Steffner, According to the affidavit, Steffner is the senior vice president and regional managing director for Newmark Grubb Knight Frank, an international commercial real estate. *Id.* ¶ 1. Steffner holds principal real estate broker licenses in multiple states and certification as a certified property manager and certified commercial investment member. *Id.* ¶ 2.

that the market value of the total monthly rents Plaintiff could expect to receive over this term is $133,074.94.

Moreover, Defendant has shown that it invoked Article 39 of the lease and reduced its monthly rent payment to a percentage of its gross sales in March 2016. According to Defendant, Article 39 of the lease grants it as the tenant the option to pay 3% of its gross sales as its rent instead of the Fixed Minimum Rent if its gross sales for any fiscal year are less than $700,000. Defendant exercised its option under Article 39 and paid and tendered to Plaintiff $1,667.47 as its monthly rent for March 2016, $1,358.29 in rent for April 2016, and $1,252.83 in rent for May 2016. The average rent for the three months was $1,425.86. Projecting the average rent over the 37 months of the current lease term between March 2016 and April 2019, Defendant will pay Plaintiff approximately $52,756.82 in total rent. The difference between the Fixed Rent Payments representing the market rent for the property and Defendant's reduced rent payments under Article 39 is $80,318.12. Therefore, the Court concludes that the economic value of the rights Plaintiff's detainer warrant seeks to protect exceeds $75,000.00, the amount in controversy required to establish this Court's jurisdiction under 28 U.S.C. § 1332.

The Court finds this approach consistent with the analysis adopted by the Sixth Circuit in *Freeland v. Liberty Mutual*. In that case the Court of Appeals had to assess the value of a declaration concerning uninsured motorist insurance coverage to the policyholder who had filed the declaratory judgment action. The Sixth Circuit measured the value of the declaratory relief as the difference between the $100,000 of uninsured motorist coverage sought by the plaintiff-policyholder, and the $25,000 in liability coverage to which the policyholder was entitled in any event.[12] Likewise, in the case at bar, the difference between the Fixed Rents Payments, which

---

[12] *Id.*

represent the market rent for the leased property, and the rents Defendant would actually pay if Plaintiff does not prevail on its claims, exceeds $75,000.00.

In its Motion to Remand, Plaintiff relies principally on two cases, neither of which the Court finds persuasive. Plaintiff cites the Middle District of Tennessee's ruling in *Currie v. Citimortgage*, where the court granted a motion to remand a forcible entry and detainer action to the General Sessions Court of Davidson County over the objection of a *pro se* party who had removed the detainer warrant to federal court. The court explained

> In order for diversity jurisdiction to exist, the matter in controversy must exceed $75,000. Here, it is clear that the detainer warrant seeks no rent, damages, or any other monetary award from Mr. Currie. The detainer warrant states clearly that the claim is for "Possession Only." (Docket No. 16–1 at 1) As such, diversity jurisdiction does not exist.[13]

The Court finds *Currie* distinguishable on its facts. *Currie* involved the simple repossession of residential property. The removing party in *Currie*, the homeowner and mortgagor, adduced no evidence to show what value of the object of the forcible entry and detainer was. In fact, nothing in *Currie* suggests that the removing party in that case made any attempt to discharge his burden to show that the federal court had subject matter jurisdiction. Unlike the removing *pro se* party in *Currie*, Defendant has carried its burden to show by a preponderance of the evidence that the amount in controversy is met and that the value of the object of Plaintiff's detainer warrant exceeds $75,000.00. Therefore, *Currie* is not persuasive.

Plaintiff also cites for support the Eastern District of Kentucky's reported decision in *YA Landholdings, LLC v. Sunshine Energy, KY I, LLC*, another case involving the value of the

---

[13] *Currie v. CitiMortgage, Inc.*, No. 3:13-1139, 2014 WL 4628523, at *1 (M.D.Tenn. Sept. 15, 2014).

object of a forcible entry and detainer warrant. The court in *YA Landholdings* collected and analyzed a number of cases from district courts around the country, all representing a variety of methods for assessing the amount in controversy where a defendant removed a forcible entry and detain action to federal court. The court noted that one measure of the value of the relief in such a case would be "the marginal change in plaintiff's economic position if it obtains possession," if "for example, the plaintiff could re-lease the premises to a new tenant at a higher rental than the defendant paid, then the amount in controversy would be the difference between the rent paid by the new tenant and that paid by the defendant."[14] The *YA Landholdings* court found, however, that the removing defendant had adduced no evidence to show the plaintiff's "change in economic position if it obtains possession of the premises" or proof "that the leases at issue are below market value."[15]

But the method discussed in *YA Landholdings* is much the same method adopted by the Court here to assess the value of possession from Plaintiff's perspective, i.e. "the marginal change in plaintiff's economic position if it obtains possession." Unlike the removing defendant in *YA Landholdings*, Defendant in this case has adduced proof to show that the rents under Article 39 are below the market rent for the property at issue. If the Court grants Plaintiff possession of the property and Defendant loses its leasehold, then Plaintiff stands to gain $80,318.12 in additional rent over the course of the current lease term. Obviously, this figure does not include rents from subsequent renewal terms of the lease, which would far exceed the minimum amount in controversy. The Court finds then that *YA Landholdings* actually supports the result in this case.

---

[14] *YA Landholdings, LLC v. Sunshine Energy, KY I, LLC*, 871 F. Supp. 2d 650, 654 (E.D. Ky. 2012) (citing *A. Levet Props. P'ship v. Bank One,* No. 03–1708, 2003 WL 21715010, at *3 (E.D. La. 2003).

[15] *Id.* at 655.

## CONCLUSION

Defendant has carried its burden to show that from Plaintiff's perspective the value of the object of this litigation exceeds the minimum amount in controversy under 28 U.S.C. §1332. Therefore, Plaintiff's Motion to Remand and request for attorney's fees and costs must be **DENIED.**

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 5, 2016.